UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on June 14, 2024

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| ANASTASIA SIMES, | : | COUNT 1: |
| | : | 50 U.S.C. § 1705 |
| Defendant. | : | (Conspiracy to Violate the International |
| | : | Emergency Economic Powers Act); |
| | : | |
| | : | COUNT 2: |
| | : | 50 U.S.C. § 1705 |
| | : | (International Emergency Economic |
| | : | Powers Act Violations); |
| | : | |
| | : | COUNT 3: |
| | : | 18 U.S.C. § 1956(h) |
| | : | (Conspiracy to Commit International |
| | : | Money Laundering); |
| | : | |
| | : | FORFEITURE: |
| | : | 18 U.S.C. §§ 981, 982; 21 U.S.C. § 853(p); |
| | : | and 28 U.S.C. § 2461(c) |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and times stated below:

### Introduction

1. From in or around February 2023 through the present, **ANASTASIA RURIKOVA SIMES ("SIMES")** and others engaged in a scheme to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, by providing services to and for the

benefit of, and receiving funds from, Aleksander Yevgenyevich Udodov ("Udodov"), who was sanctioned by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") as a Specially Designated National ("SDN"). **SIMES** and others further conspired to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

2.      Specifically, after OFAC designated Udodov on February 24, 2023, **SIMES**, a U.S. citizen, continued to provide goods and services to Udodov by purchasing antiques and artwork, both within the United States and elsewhere. **SIMES** shipped items purchased for Udodov to her home in Huntly, Virginia ("**SIMES's** Virginia residence"), and overseas. In return, **SIMES** received reimbursements and a service fee from Udodov and individuals acting on his behalf. At no time did **SIMES** disclose her activities on behalf of Udodov to, or obtain approval for such activities from, OFAC, which is located in the District of Columbia.

## The Russia Sanctions Regime

3.      IEEPA authorizes the President of the United States to declare a national emergency through Executive Order ("E.O.") to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Under IEEPA, it a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the IEEPA. 50 U.S.C. § 1705(a), (c).

4.      On April 15, 2021, pursuant to IEEPA, the President issued E.O. 14024, which declared a national emergency with respect to certain harmful foreign activities undertaken by the Russian Federation. To address this national emergency, the President blocked all property and interests in property that were then or thereafter came within the United States or the possession or control of any U.S. person or of individuals determined by the Secretary of the Treasury or the Secretary of State to meet one or more enumerated criteria, including persons and entities

determined to be controlled or owned by, or to have acted or purported to act for or on behalf of, directly or indirectly, the Government of Russia.

5. To implement E.O. 14024, OFAC issued the "Russian Harmful Foreign Activities Sanctions Regulations," 31 C.F.R. Part 587. *See* 86 Fed. Reg. 20,249. The regulations provide that the names of persons designated by OFAC pursuant to E.O. 14024, and whose property and interests in property are therefore blocked, are published in the Federal Register and incorporated into the SDN and Blocked Persons List ("SDN List"), which is published on OFAC's website. *See* 31 C.F.R. § 587.201, Note 1.

6. E.O. 14024 prohibits, among other things, U.S. persons from transferring, paying, exporting, withdrawing, or otherwise dealing in the property or interests in property of a designated person identified on the SDN List. E.O. 14024 § 1. These prohibitions include the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of, or the receipt of funds, goods, or services from, a designated person identified on the SDN List. E.O. *Id.* § 2. Any transaction that evades or avoids, or has the purpose of evading or avoiding, or causes a violation of E.O. 14024 is further prohibited. *Id.* § 4.

7. As defined, "property" and "property interest" include, but are not limited to, money, checks, drafts, bullion, bank deposits, debts, evidences of title, ownership, or indebtedness, services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interests therein, present, future, or contingent. 31 C.F.R. § 587.311.

8. "U.S. person" is defined as a United States citizen, lawful permanent resident, entity organized under the law of the United State or any jurisdiction within the United States (including foreign branches), or any person in the United States. 31 C.F.R. § 587.314.

9. On February 24, 2023, following Russia's full-scale, unprovoked invasion of Ukraine, OFAC designated Udodov and his Moscow-based management consulting firm, Limited Liability Company Aforra Management ("Aforra Management"), pursuant to E.O. 14024 for operating or having operated in the management consulting sector of the Russian Federation economy. In the same designation, OFAC added several Russia-based companies owned by Udodov for having acted or purported to act for or on behalf of Udodov.

10. It is a violation of IEEPA for a U.S. person to transact with Udodov or Aforra Management without authorization from OFAC in the form of a license. 50 U.S.C. § 1705(a); E.O. 14024 § 1; 31 C.F.R., Part 587.

### The Defendant

11. **SIMES** is a dual U.S. and Russian citizen and resident of Moscow, Russia, and Huntly, Virginia. **SIMES** owns an online jewelry retail company. According to travel records, **SIMES** last entered the United States on a U.S. passport on or about February 15, 2024, and returned to Russia on or about April 17, 2024.

12. **SIMES** did not apply for or obtain a license from OFAC, located in the District of Columbia.

### SIMES's Pre-Designation Contacts with Udodov

13. Starting in or around July 2022, **SIMES** sought assistance from Udodov and his close associate ("Udodov Associate 1") to sell her jewelry in Russian department stores. The same month, Udodov Associate 1 wrote **SIMES** that Udodov Associate 1 had "also moved my second favorite oligarch:)))  in with AU [Aleksander Udodov] in my new office." This conversation, as with others referenced herein, was translated from Russian to English.

14. On or about July 12, 2022, **SIMES** coordinated with Udodov Associate 1 regarding

4

a meeting with Udodov at Russian Department Store 1 in Moscow, Russia. In advance of the meeting, **SIMES** received from Udodov Associate 1 a contact card for Udodov. Later that same day, **SIMES** wrote Udodov, "Aleksander Evgenievich, good afternoon! This is Anastasia Rurikova. Thank you so much for so generously inviting me to meet with the [owner of Russian Department Store 1] 🙏. I'll be at 16. Where to look for you?"

15. On or about July 16, 2022, **SIMES** messaged Udodov, "Aleksander Evgenievich, good afternoon! I want to thank you very much – [Russian Department Store 1] has accepted my brand and we have already begun to prepare the presentation of my collection. I am eternally grateful to you!"

16. On or about September 24, 2022, **SIMES** messaged Udodov Associate 1, "please take a look at the auctions - what should I bring AU [Aleksander Udodov]?"

## COUNT ONE

### (50 U.S.C. § 1705)
### (Conspiracy to Violate the Emergency Economic Powers Act)

### The Sanctions Scheme

17. From on or about February 24, 2023, and continuing through the present, in the District of Columbia and elsewhere, the defendant,

### ANASTASIA SIMES,

and others, did knowingly and intentionally conspire and agree with others to violate IEEPA by providing services to and for the benefit of Udodov, an individual designated by OFAC and identified on the SDN List pursuant to E.O. 14024, by receiving funds from Udovov, and by evading the prohibitions set forth in E.O. 14024, without obtaining a license from OFAC, which is located in the District of Columbia.

### Manner and Means

18. **SIMES** and others carried out the conspiracy through the following manner and means:

   a. **SIMES** and Udodov Associate 1 maintained an excel file ("Art Spreadsheet") that listed items purchased for Udodov, a description and photograph of each item, the cost of each item, and the total number of items intended for Udodov. Over 900 items on the Art Spreadsheet were designated for Udodov.

   b. **SIMES** purchased antiques and artwork from over 30 arthouses and galleries in the United States and Europe for the benefit of Udodov.

   c. **SIMES** shipped antiques and artwork intended for Udodov to **SIMES's** Virginia residence and to individuals and entities associated with Udodov overseas.

   d. For purchases made on behalf of Udodov, **SIMES** was reimbursed and received a five percent service fee.

   e. **SIMES** was paid by an associate of Udodov ("Udodov Associate 2") and an information technology strategy company owned by Udodov Associate 2 based in the United Arab of Emirates ("UAE Company 1"). **SIMES** received these funds at Account 1 at U.S. Financial Institution 1.

### Acts in Furtherance of the Conspiracy

19. **SIMES** and others took the following overt acts, among others, to further the conspiracy:

   20. **SIMES** paid approximately $220,000 to purchase and ship antiques and artwork

for the benefit of Udodov.

21. Beginning no later than in or around July 2023, **SIMES** shipped antiques and artwork intended for Udodov to **SIMES**'s Virginia residence, intending to ship these items to Russia.

22. In or around December 2023, **SIMES** contacted Shipping Company 1 and requested an estimate for shipping approximately $29,800 of antiques and art purchased at an art gallery in the United Kingdom. **SIMES** provided two possible shipping addresses for the purchased goods, the address of a cargo company based in Germany ("German Company 1"), in which Udodov had owned a controlling interest until March 2023, and **SIMES's** Virginia residence.

23. On or about January 4, 2024, **SIMES** drafted and shared with Udodov Associate 1 an invoice billed to UAE Company 1 for $11,475 worth of books and linens with a five percent "agent's fee," for a total balance due of $12,048.75. The invoice listed UAE Company 1 as the payor and the beneficiary as "Anastasia Simes." The payee account was listed as Account 1 at U.S. Financial Institution 1.

24. On or about that same date, **SIMES** drafted and shared with Udodov Associate 1 a second invoice for $50,979.20 worth of artwork, furniture, and other furnishings, with a five percent "agent's fee," for a total balance due of $53,528.15. The invoice listed Udodov Associate 2 as the payor and the beneficiary as "Anastasia Simes." The payee account was listed as Account 1 at U.S. Financial Institution 1. The items listed in both invoices matched the descriptions of items designated for Udodov in the Art Spreadsheet.

25. **SIMES** coordinated with Udodov Associate 1 regarding how to receive payment from Udodov. **SIMES** received from Udodov Associate 1 a screenshot of text conversations

between Udodov Associate 2 and Udodov discussing how to pay **SIMES**. In the screenshot, Udodov Associate 2 wrote Udodov, "It's all done. They will have everything on Mon. The only thing we will have to do is to request to redo the invoice to me personally. The bank will request it in a month or two."

26.     **SIMES** received from Udodov Associate 1 a screenshot of a conversation between another associate of Udodov ("Udodov Associate 3") and Udodov Associate 1, in which Udodov Associate 1 provided banking information associated with **SIMES**. In the screenshot, Udodov Associate 3 wrote, "[Udodov Associate 1], this doesn't work, we need an invoice with the required banking information. The girl has to know what the invoice looks like for the bank with the required banking information."

27.     **SIMES** received from Udodov Associate 1 a second screenshot of a conversation between Udodov Associate 1 and Udodov Associate 3. In the screenshot, Udodov Associate 3 wrote, "Are we moving forward? That is, the total sum is 37,460?" Udodov Associate 1 responded, "Yes, yes, of course! We need it faster." "I'll take a look here right now and then will wake Nastya," a nickname for **SIMES**.

28.     From in or around September 2023 to May 2024, Udodov Associate 2 and UAE Company 1 transferred approximately $285,031 to Account 1 at U.S. Financial Institution 1.

29.     As of in or around August 2024, **SIMES** stored over 140 items intended for Udodov in **SIMES's** Virginia residence, which were ultimately to be shipped to Russia. The items were packaged for shipment with some items labeled with Udodov's initials and with numbers corresponding to the number assigned the item on the Art Spreadsheet. Among other antiques and artwork intended for Udodov, the following items were stored in **SIMES's** Virginia residence:

  a.     One vintage Tiffany sterling silver teacup and vodka cup labeled with "245

AU," matching the number and description of item 245 on the Art Spreadsheet, which is listed for benefit of "AU."



b. One box of "white wedding porcelain" labeled with "AU," matching the description of item 205 on the Art Spreadsheet, which is listed for the benefit of "AU."



c. One landscape artwork labeled "Lake of the four Cantons, F.C. Welsch," matching the description of item 554 on the Art Spreadsheet, which is listed

9

for the benefit of "AU."



d.  One bronze statue found in a box labeled with "163" and "165," matching the description of item 163 on the Art Spreadsheet, which is described as a "Frederick-Auguste Bartholdi, Neo-Classical Bronze Sculpture of Minerva" and listed for the benefit of "AU."



## COUNT TWO
## (50 U.S.C. § 1705)
## (International Emergency Economic Powers Act Violations)

30. The allegations in Paragraphs 1 through 29 of this Indictment are incorporated and re-alleged by reference.

31. From in or around February 2023 through the present, within the District of Columbia and elsewhere, the defendant,

**ANASTASIA SIMES,**

a U.S. person, did knowingly and willfully provide funds, goods, and services to and for the benefit of Udovov, an individual OFAC had designated and identified on the SDN List pursuant to E.O. 14024, receive funds, goods, and services from Udovov, and evade the prohibitions set forth in E.O. 14024, without first having obtained a license from OFAC, which is located in the District of Columbia.

(In violation of Title 50, United States Code, Section 1705)

## COUNT THREE
## (18 U.S.C. § 1956(h))
## (Conspiracy to Commit International Money Laundering)

32. The allegations in Paragraphs 1 through 29 of this Indictment are incorporated and re-alleged by reference herein.

33. From in or around February 2023 through the present, within the District of Columbia and elsewhere, the defendant,

**ANASTASIA SIMES,**

did knowingly and intentionally conspire and agree with others to transport, transmit, and transfer, monetary instruments and funds to a place in the United States from and through a place outside the United States, knowing that the monetary instrument or funds involved in the transportation, transmission, and transfer represented the proceeds of violations of IEEPA and knowing that such

transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, a violation of IEEPA, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(In violation of Title 18, United States Code, Section 1956(h))

## FORFEITURE ALLEGATIONS

34. Upon conviction of the offense alleged in Counts One and Two of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

35. Upon conviction of the offense alleged in Count Three of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 982(a)(1).

## MONEY JUDGMENT

36. In the event of conviction, the United States may seek a money judgment.

## SUBSTITUTE ASSETS

37. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(1); Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p)).

A TRUE BILL

FOREPERSON

*Matthew M. Graves /SM*

MATTHEW M. GRAVES
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA