**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | Case No. 24-CR-403 |
| | ) | |
| ANASTASIA SIMES, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ANASTASIA SIMES' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.    The Indictment fails as a matter of law because IEEPA expressly exempts exporting artwork for commercial purposes from criminal prosecution..................................................... 5

    II.    The Indictment should be dismissed pre-presentment..................................................... 10

        A.    Ms. Simes is not "fugitives." ................................................................................. 11

        B.    Ms. Simes absence from the jurisdiction dose not warrant the "severe sanction" of disentitlement. .................................................................................................................. 14

CONCLUSION........................................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajaka v. Gacki*,
  557 F. Supp. 3d 45 (D.D.C. 2021) ........................................................................................16

*Aptheker v. Secretary of State*,
  378 U.S. 500 (1964) .............................................................................................................16

*Chevron v. NRDC*,
  467 U.S. 837 (1984) ............................................................................................................8, 9

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ..............................................................................................................8

*Collazos v. United States*,
  368 F.3d 190 (2d Cir. 2004) .................................................................................................11

*Daccarett-Ghia v. Commissioner*,
  70 F.3d 621 (D.C. Cir. 1995) ...........................................................................................14, 16

*Degen v. United States*,
  517 U.S. 820 (1996) ..........................................................................................................11, 14

*Friko Corp. v. CIR*,
  26 F.3d 1139 (D.C. Cir. 1994) ..............................................................................................11

*General Electric v. E.P.A.*,
  53 F.3d 1324 (D.C. Cir. 1995) ...............................................................................................9

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ..............................................................................................................7

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242 (2010) ..............................................................................................................7

*In re Hijazi*,
  589 F.3d 401 (7th Cir. 2009) ........................................................................................ *passim*

*Hughes v. Thompson*,
  415 U.S. 1301 (1974) (Douglas, J., in chambers) ............................................................10, 14

*Kalantari v. NITV*,
  352 F.3d 1202 (9th Cir. 2003) ...........................................................................................9, 10

*In re Kashamu*,
    769 F.3d 490 (7th Cir. 2014) ...............................................................................12, 13

*Kent v. Dulles*,
    357 U.S. 116 (1958)................................................................................................16

*Lazaridis v. DOJ*,
    713 F. Supp. 2d 64 (D.D.C. 2010) ........................................................................16

*Loper Bright v. Raimondo*,
    603 U.S. 369 (2024).............................................................................................9, 15

*Marland v. Trump*,
    498 F. Supp. 3d 624 (E.D. Pa. 2020) .....................................................................6

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974)................................................................................................9

*Ortega-Rodriguez v. United States*,
    507 U.S. 234 (1993)...............................................................................................17

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019)................................................................................................7, 8

*Strassheim v. Daily*,
    221 U.S. 280 (1911) (Holmes, J.) ........................................................................11

*United States v. Ali*,
    718 F.3d 929 (D.C. Cir. 2013) ...............................................................................5

*United States v. Amirnazmi*,
    645 F.3d 564 (3d Cir. 2011)...............................................................................9, 15

*United States v. Any & All Funds on Deposit in Account No. XXXXX-XXXX1518
    at HSBC Bank PLC*,
    87 F. Supp. 3d 163 (D.D.C. 2015) ...................................................................11, 12

*United States v. Bescond*,
    24 F.4th 759 (2d Cir. 2021) ........................................................................... *passim*

*United States v. Bokhari*,
    757 F.3d 664 (7th Cir. 2014) ................................................................................13

*United States v. Cornelson*,
    595 F. Supp. 3d 265 (S.D.N.Y. 2022)...............................................................13, 17

*United States v. Golden*,
    239 F.2d 877 (2d Cir. 1956) (Frank, J., concurring)..............................................10

*United States v. Griffith*,
515 F. Supp. 3d 106 (S.D.N.Y. 2021)........................................................................15

*United States v. Guertin*,
67 F.4th 445 (D.C. Cir. 2023), abrogated on other grounds by *Kousisis v.
United States*, 605 U.S. 114 (2025) ............................................................................5

*United States v. Martirossian*,
917 F.3d 883 (6th Cir. 2019) ....................................................................................12

*United States v. Noriega*,
683 F. Supp. 1373 (S.D. Fla. 1988) .....................................................................14, 15

*United States v. Osipov*,
No. 22-CR-369-TSC-ZMF, 2024 WL 4367523 (D.D.C. Oct. 1, 2024) ...............12, 13

*United States v. Simes*,
No. 24-cr-404 (D.D.C. Sept. 4, 2024).........................................................................2

*United States v. Todd*,
446 F.3d 1062 (10th Cir. 2006) ..................................................................................5

*Zemel v. Rusk*,
381 U.S. 1 (1965).....................................................................................................16

**Statutes**

26 U.S.C.A. § 170.........................................................................................................7

18 U.S.C. 1956(h) .........................................................................................................1

50 U.S.C. § 1702(b)(3) ..............................................................................................1, 6

International Emergency Economic Powers Act, 50 U.S.C. §§ 1701, *et seq.* ...................... *passim*

**Other Authorities**

19 C.F.R. § 10.53 ..........................................................................................................7

31 C.F.R. § 510.213(c)..........................................................................................1, 6, 15

*Antique*, OXFORD ENGLISH DICTIONARY,
https://www.oed.com/dictionary/antique_adj?tab=meaning_and_use#1541022
(May 4, 2026)..............................................................................................................7

Fed. R. Crim. P. 12(b)(3)(B).......................................................................................10

*Fugitive*, BLACK'S LAW DICTIONARY (11th ed. 2019)................................................11

H.R. Conf. Rep. No. 103-482 (1994), *reprinted in* 1994 U.S.C.C.A.N. 398 ..............................6, 9

Kyle Roderick, *Timeless Jewels By Anastasia Simes Embody Powers Of Nature,*
    *Universal Symbols And Cosmic Life Force*, Forbes (Dec. 14, 2021) .......................................2

Office of Foreign Assets Control, *Advisory and Guidance on Potential Sanctions*
    *Risk Arising from Dealings in High-Value Artwork* (Oct. 30, 2020),
    https://ofac.treasury.gov/media/49091/download?inline.....................................................8, 10

Office of Foreign Assets Control, *Russia-related Designations and Designations*
    *Updates; Belarus Designations; Publication of Russia-related Determination;*
    *Issuance of Russia-related General Licenses and Associated Frequently Asked*
    *Questions* (Feb. 24, 2023), https://ofac.treasury.gov/recent-actions/20230224 .......................3

**PRELIMINARY STATEMENT**

Anastasia Simes is an American citizen and internationally exhibited artist who is presently living abroad with her journalist husband, Dimitri Simes. The Indictment against her must be dismissed because it charges her with conduct that Congress has expressly exempted from criminal prosecution.

The Indictment charges Ms. Simes with violating the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq.*, and 18 U.S.C. § 1956(h) because, in exchange for "reimbursements and a service fee," she "purchased antiques and artwork" and "shipped those items" for the benefit of a sanctioned individual. Indictment ¶ 2. This conduct— and this conduct alone—forms the factual basis for all three counts of the Indictment: conspiracy to violate IEEPA (Count One), a substantive IEEPA violation (Count Two), and money laundering, predicated on the alleged offenses in Count One and Two (Count Three).

This Indictment is facially invalid because Congress expressly protected the import and export of artwork for commercial and other purposes from IEEPA's reach. Specifically, IEEPA expressly denies the government "the authority to regulate or prohibit, directly or indirectly … the importation from any country, or the exportation to any country, whether commercial or otherwise, [of] … artworks." 50 U.S.C. § 1702(b)(3); *see also* 31 C.F.R. § 510.213(c). Because that is all the government alleges and because Counts One and Two rest entirely on this exempt conduct, the Indictment fails as a matter of law. And because Count Three depends wholly on those counts, it too must be dismissed without delay.

## FACTUAL BACKGROUND

Anastasia Simes is a dual citizen of the United States and Russia. Indictment ¶ 11. She is an award-winning artist, whose paintings and fine jewelry are held in public and private collections around the world. Her work has been featured in both solo and group exhibitions in museums and galleries in the United States, including the Museum of Contemporary Art in Washington, DC, as well as internationally, including Art-Monaco at the Grimaldi Forum in Monaco, Asia Contemporary in Hong Kong, the Bochum Club in Bochum, Germany, and major museums throughout Russia. She has been an active presence in the DC metropolitan theater business since 2002 and her work as a set and costume designer has been repeatedly nominated for the Helen Hayes Award and received the Helen Hayes Award for Outstanding Costume Design for "Othello". She is currently preparing a retrospective at the State History Museum in Moscow, featuring her sketches and jewelry pieces.

Ms. Simes maintains a residence in Virginia with her husband, Dimitri Simes. In 2017, Ms. Simes founded a jewelry company in Virginia focused on creating museum quality pieces using rare and ancient techniques. In 2021, Forbes magazine profiled Ms. Simes, featuring her career as a jewelry designer. Kyle Roderick, *Timeless Jewels By Anastasia Simes Embody Powers Of Nature, Universal Symbols And Cosmic Life Force*, FORBES (Dec. 14, 2021). The article highlighted Ms. Simes' use of antique elements in her jewelry, and she maintains an extensive collection of art and antiques in her Virginia home. Ms. Simes last was in the United States on April 17, 2024, and has since continually resided in Russia.

On September 4, 2024, the United States Attorney's Office for the District of Columbia unsealed an indictment against Ms. Simes and her husband on three counts relating to alleged violations of IEEPA. *United States v. Simes*, No. 24-cr-404 (D.D.C. Sept. 4, 2024). As explained in the separate motion to dismiss that indictment, the allegations in Case No. 24-cr-404 all turn

on Mr. Simes' working as a journalist for a sanctioned Russian news outlet. Ms. Simes is charged with being a co-conspirator with her husband to "launder" his compensation as a journalist by paying the federal and local taxes, as well as the mortgage on their Virginia home.

The same day the Simes were charged together, the government individually charged Ms. Simes with three additional counts arising under IEEPA: a substantive violation of IEEPA for exporting artwork to a sanctioned individual, conspiracy to violate IEEPA based upon the same allegations, and money laundering based upon the allegation that the proceeds she received from exporting that artwork were intermingled with the funds the Simes used to pay their federal and local taxes, and mortgage in Virginia.

According to the Indictment, in early July 2022, Ms. Simes communicated with Aleksander Yevgenyevich Udodov, a Russian-national who was not subject to sanctions at the time, as part of her work for an architecture and design firm. Indictment ¶ 13. This communication related to Ms. Simes's art business and, in a message quoted in the Indictment, items from "auctions" for Mr. Udodov. *Id*. ¶ 16.

In February 2023, the Office of Foreign Assets Control ("OFAC") listed Mr. Udodov along with more than two-hundred and fifty other individuals as Specifically Designated Nationals ("SDNs") under Executive Order 14024, 86 Fed. Reg. 20,249.[1] The basis of Mr. Udodov's designation was not specified and the Indictment does not allege that Ms. Simes knew or had reason to know that Mr. Udodov had been designated as an SDN. Indictment ¶ 9.

---

[1] Office of Foreign Assets Control, *Russia-related Designations and Designations Updates; Belarus Designations; Publication of Russia-related Determination; Issuance of Russia-related General Licenses and Associated Frequently Asked Questions* (Feb. 24, 2023), https://ofac.treasury.gov/recent-actions/20230224.

3

Thereafter, between July 2023 and mid-2024, the Indictment alleges that Ms. Simes imported and exported, or planned to export, various artwork to Mr. Udodov or for his benefit. This artwork, like the one depicted below, was allegedly purchased from "arthouses and galleries in the United States" and elsewhere, and shipped to Ms. Simes's home in Huntly, Virginia, from where they "were ultimately to be shipped to Russia." *Id.,* ¶ 18, 29. The Indictment makes no effort to distinguish artworks that Ms. Simes purchased for her home in Huntly or for use in her own artworks. And though the indictment makes certain implications with its use of a passive voice subjunctive ("were … to be") combined with the adverb "ultimately," the Indictment omits the fact that not a single item Ms. Simes purchased was ever transported to Russia or anywhere else outside the United States, even though Ms. Simes routinely traveled between Moscow and the United States during the indictment period.



The artwork that was allegedly intended for exportation to Mr. Udodov, like the representative example above, was logged in an excel spreadsheet, identified as the "Art Spreadsheet" in the Indictment, which Ms. Simes maintained. *Id.* For her import/export services, Ms. Simes was allegedly reimbursed the cost of the artwork and paid a five percent commission. *Id.* ¶ 18.

The Indictment alleges no other conduct as the basis for criminal charges.

## ARGUMENT

The Indictment must be dismissed because all three charges accuse Ms. Simes of engaging in conduct, specifically the importation and exportation of artwork, that IEEPA explicitly exempts from the scope of criminal liability. As with the indictment in Case No. 24-cr-404, the Indictment here should be dismissed without requiring Ms. Simes to return to the United States for arraignment.

### I. The indictment fails as a matter of law because IEEPA expressly exempts exporting artwork for commercial purposes from criminal prosecution.

The question this Court must answer on a motion to dismiss an indictment "is whether the government's allegations are legally sufficient." *United States v. Ali*, 718 F.3d 929, 932 (D.C. Cir. 2013). To survive a motion to dismiss, those allegations must "plausibly allege" facts that satisfy all the elements of the crimes charged, as defined by a statute's proscriptive text, its exceptions, "and Supreme Court case law construing the statute." *United States v. Guertin*, 67 F.4th 445, 450 (D.C. Cir. 2023), abrogated on other grounds by *Kousisis v. United States*, 605 U.S. 114 (2025). An indictment must be dismissed if the undisputed facts, including those proffered by the government in the Indictment, establish that "as a matter of law, the [d]efendant could not have committed the offense for which he was indicted." *United States v. Todd,* 446 F.3d 1062, 1067-69 (10th Cir. 2006).

5

Here, the Indictment fails on its face to state any of the charged offenses. Indeed, it describes in near exact terms the very conduct that IEEPA prohibits the government from treating as criminal under IEEPA.

The Indictment proceeds from the blanket statement that "It is a violation of IEEPA for a U.S. person to transact with Udodov or Aforra Management without authorization from OFAC in the form of a license." Indictment ¶ 10. But at no point does the Indictment acknowledge, let alone explain, how this sweeping statement is consistent with the text of IEEPA. Section §1702(b)(3) of IEEPA, the so-called Berman Amendments, is clear:

> The authority granted to the President by this section does not include the authority to regulate or prohibit, directly or indirectly … *the importation from any country, or the exportation to any country, whether commercial or otherwise,* of … publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, *artworks*, and news wire feeds.

50 U.S.C. 1702(b)(3) (emphasis added); *see also* 31 C.F.R. § 510.213(c).

As is elaborated at length in the motion to dismiss the indictment in Case No. 24-cr-404, Congress wrote the Berman Amendments broadly to "facilitate transactions and activities incident to the flow of information and informational materials without regard to the type of information, its format, or means of transmission." H.R. Conf. Rep. No. 103-482, at 239 (1994), *reprinted in* 1994 U.S.C.C.A.N. 398, 483. By barring the use of IEEPA sanctions to "regulate or prohibit, directly or indirectly" the traffic in "any information or informational materials," "whether commercial or otherwise," and "regardless of format, or medium of transmission," Congress sought to create "an 'IEEPA-free zone,' excluding, as relevant here, the indirect regulation of informational materials from the President's otherwise broad emergency powers." *Marland v. Trump*, 498 F. Supp. 3d 624, 629, 640-41 (E.D. Pa. 2020).

The Indictment of Ms. Simes targets conduct that is at the textual heart of the IEEPA-free zone Congress created. The Indictment specifies three core allegations:

1. Ms. Simes "purchas[ed] antiques and artwork";[2]

2. Ms. Simes "shipped items purchased for Udodov to her home in Huntly Virginia … and overseas"; and

3. Ms. Simes "received reimbursements and a service fee from Udodov".

Indictment ¶ 2. Ms. Simes denies these allegations. But even assuming everything alleged in the Indictment is true, Ms. Simes allegedly 1) engaged in transactions for artwork, 2) imported and exported that artwork to various countries; and 3) did so for a commercial purpose. That is the literal conduct that IEEPA bars the government from seeking "to regulate or prohibit, directly or indirectly" under IEEPA.

When interpreting a statute, this Court must "begin by analyzing the statutory language, 'assuming that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (cleaned up) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). Where, as here, the statute's language is clear, then that language controls. *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) ("If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last."). And that clear language forbids the government from prosecuting Ms. Simes for the precise conduct alleged in the Indictment.

---

[2] While the Indictment refers collectively to "antiques and artworks," antiques are just a subcategory of artwork. This is true as a matter of trade law, which classifies antiques as a subcategory of "Works of Art" for customs purposes. 19 C.F.R. § 10.53; *see also* 26 U.S.C.A. § 170 (excluding "paintings, antiques, and other objects of art" from the definition of "household items" for tax purposes). It is also true as a matter of plain meaning. *See*, *e.g.*, OXFORD ENGLISH DICTIONARY, antique ("3a. An object such as a piece of furniture or work of art which is valuable or collectable because of its age and quality. 3b. With *the*. Such objects, works of art, etc., considered collectively.").

To be sure, in 2020, OFAC issued guidance respecting "sanctions risks arising from high-value artwork associated with persons blocked pursuant to OFAC authorities[.]"[3] That guidance announced that OFAC "does not interpret [the Berman Amendments] exemption to allow blocked persons or their facilitators to evade sanctions by exchanging financial assets such as cash, gold, or cryptocurrency for high-value artwork or vice versa." *Id.*

Even if the High-Value Artwork Guidance was authoritative and even if this Court were still bound by *Chevron v. NRDC*, 467 U.S. 837 (1984) to afford OFAC's permissible interpretations of IEEPA deference, all of Ms. Simes conduct was still within the boundaries that OFAC itself set. The High-Value Artwork Guidance does not caution that *all* transactions involving the import/export of artwork for commercial purposes are now outside the Berman Amendments. It cautions that "a transaction with a blocked person involving *high-value artwork*" is prohibited. *High-Value Artwork Guidance*, *supra* note 3, at 3 (emphasis added). OFAC then defines "high-value artwork" as "artwork with an estimated market value of more than $100,000." *Id.* at 1 n.2.

The Indictment does not accuse Ms. Simes of dealing in "High-Value Artwork." It alleges that Ms. Simes cumulatively spent $220,000 purchasing and shipping hundreds of works of art, with the largest single transaction comprising "$29,800 of antiques and art purchased at an art gallery in the United Kingdom." Indictment ¶ 22. Even under OFAC's cramped interpretation of the Berman Amendments, therefore, Ms. Simes conduct was neither prohibited nor prohibitable, and she would have had no fair notice that serving as an importer/exporter of decorative artwork constituted a felony. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S.

---

[3] Office of Foreign Assets Control, *Advisory and Guidance on Potential Sanctions Risk Arising from Dealings in High-Value Artwork* (Oct. 30, 2020), https://ofac.treasury.gov/media/49091/download?inline.

142, 156 (2012); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 295 (1974); *General Electric v. E.P.A.*, 53 F.3d 1324 (D.C. Cir. 1995).

Assuming that the allegations were different, however, and the Indictment had charged Ms. Simes with trafficking in "high-value artwork," the Indictment would still need to be dismissed because the High-Value Artwork Guidance is irreconcilable with the text of IEEPA. The Berman Amendments draw no distinction between the commercial export of artwork for $1, $100,000, or $1,000,000. And the High-Value Artwork Guidance offers no reasoning that would explain how OFAC's interpretation conforms to the statutory text. It simply declares ipse dixit that the Berman Amendments do not cover a category of commercial transactions involving artwork that OFAC has arbitrarily defined as "High-Value." Deference to such an interpretation *might* have been permissible under the framework of *Chevron. See United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011). But under the framework of *Loper Bright v. Raimondo*, 603 U.S. 369 (2024), such deference is neither required, nor warranted, particularly where OFAC's interpretation self-evidently conflicts with the plain text of the statute.

Even under *Chevron*, OFAC's unreasoned interpretive guidance would not be permissible. The Berman Amendments, both textually and as a matter of legislative intent, "have a broad scope." H.R. Conf. Rep. No. 103-482, at 239 (1994), *reprinted in* 1994 U.S.C.C.A.N. 398, 483. They forbid prohibitions on the import/export of "artworks," regardless of whether those prohibitions are implemented "directly and indirectly" and regardless of whether the transactions are "commercial or otherwise."

As the Ninth Circuit has held, it is significant that "the phrase 'commercial or otherwise' directly follows the importation/exportation clauses, and quite clearly modifies them." *Kalantari v. NITV*, 352 F.3d 1202, 1206 (9th Cir. 2003). Congress understood, when it was protecting the

9

commercial import/export of informational materials such as "books," "movies," and "artwork" from the reach of the sanctions laws, that doing so would necessarily involve "blocked persons accessing the U.S. market and financial system." *High-Value Artwork Guidance*, *supra* note 3, at 1. This gap in sanctions coverage was a price that Congress was nevertheless willing to incur to ensure the free flow of commodities with expressive value. The Ninth Circuit therefore had no difficulty concluding that the Berman Amendments' "exemption plainly allows a United States person to pay Iranians in exchange for the importation of a movie." *Kalantari*, 352 F.3d at 1207. And given that IEEPA draws no distinction between imports and exports, the Berman Amendments also "plainly allow a United States person" to be paid for exporting artworks.

The allegations against Ms. Simes, even if true, do not state any of the crimes charged. This Court must therefore dismiss the Indictment.

## II. The indictment should be dismissed pre-presentment.

As with the Indictment in Case No. 24-cr-404, in which Ms. Simes is charged jointly with her husband, this Court should dismiss the Indictment against Ms. Simes individually without requiring her presentment. Motions raising a defect in the indictment can be made at any time before trial. Fed. R. Crim. P. 12(b)(3)(B) and there is no per se rule that "invariably, a defendant must incur the expense of a many-thousand-mile journey to submit himself to the jurisdiction of the court, in order to have an indictment quashed." *United States v. Golden*, 239 F.2d 877, 880 (2d Cir. 1956) (Frank, J., concurring). Rather, it is well within the court's discretion to grant a defendant's motion to dismiss prior to presentment, when justice requires. *Hughes v. Thompson*, 415 U.S. 1301 (1974) (Douglas, J., in chambers).

Abstaining from deciding such a motion due to the defendant's absence from the United States is an "extreme sanction" the resort to which is limited to the rare circumstances where the

10

"fugitive disentitlement doctrine" applies *See Degen v. United States*, 517 U.S. 820, 829 (1996); *see also Friko Corp. v. CIR*, 26 F.3d 1139, 1143 (D.C. Cir. 1994) (fugitive disentitlement is "a sanction imposed on the basis of the particular court's exercise of its inherent authority"). That doctrine applies only where 1) the defendant is a genuine "fugitive" from justice and 2) the circumstances create a "necessity to justify the rule of disentitlement." *Id*. Here, neither condition is met, and the extraordinary facts this case warrant prompt judicial resolution.

### A. Ms. Simes is not a "fugitive."

A fugitive is "[s]omeone who flees or escapes; a refugee," or "[a] criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp[ecially] by fleeing the jurisdiction or by hiding." BLACK'S LAW DICTIONARY (11th ed. 2019); "Fugitivity implies some action by [the defendant] to distance herself from the United States or frustrate arrest." *United States v. Bescond,* 24 F.4th 759, 771 (2d Cir. 2021); *see also Strassheim v. Daily*, 221 U.S. 280, 285 (1911) (Holmes, J.) ("to convert a criminal under the laws of a State into a fugitive from justice … he should have left the State after having incurred guilt there."); *In re Hijazi*, 589 F.3d 401, 409 (7th Cir. 2009); *cf. Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004) (describing the meaning of fugitive at common law); *United States v. Any & All Funds on Deposit in Account No. XXXXX-XXXX1518 at HSBC Bank PLC*, 87 F. Supp. 3d 163, 168 (D.D.C. 2015) (holding that an individual is not a fugitive unless they "refuse[] to return in order to escape criminal liability"). Where they have not taken "such action," they are not a "fugitive." *Bescond*, 24 F.4th at 771.

The common law categorizes two types of fugitives: traditional and constructive. *See Bescond*, 24 F.4th at 771-72. There is no question that Ms. Simes is not a "traditional" fugitive,

11

insofar as she has neither "fled nor concealed herself." *Id*. Nor is she a "constructive" fugitive under this Indictment, defined as individuals who are "in the United States while allegedly committing the charged conduct" and then "refuse[] to return to the United States in order to avoid prosecution." *Id*. at 772.

The D.C. Circuit has no decision on what it takes to "avoid prosecution" such that a criminal defendant becomes a "constructive fugitive." And the decisions within this circuit have divided over whether an individual's mere failure to return to the United States from their residence abroad, without taking affirmative steps to avoid process, are sufficient. In *Any & All Funds*, Judge Cooper ruled that someone residing abroad was not a constructive fugitive in the absence of affirmative evidence showing that she "intended to return to the United States before she learned of the indictment" and then failed to do so. 87 F. Supp. 3d at 168 (D.D.C. 2015). In *Osipov*, however, Magistrate Judge Faruqi ruled that it was sufficient for an individual to merely reside in "a country that will not extradite him." *United States v. Osipov*, No. 22-CR-369-TSC-ZMF, 2024 WL 4367523, at *1 (D.D.C. Oct. 1, 2024).

Judge Cooper's assessment is both more consistent with the ordinary meaning of the word "fugitive" and the holdings of sister circuits. Magistrate Judge Faruqi's unpublished report and recommendation in *Osipov*, by contrast, created an acknowledged circuit split with published, thoroughly reasoned decisions from the Second Circuit in *Bescond* and the Seventh Circuit in *Hijazi*. To justify this split, *Osipov* relied instead on the Sixth Circuit's decision in *United States v. Martirossian*, 917 F.3d 883, 885 (6th Cir. 2019) and the Seventh Circuit's decision in *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014). But neither case was apposite. While the Sixth Circuit in *Martirossian* expressed sympathy for the district court's invocation of the fugitive disentitlement doctrine, the only question before the Court was whether the district

12

court's decision to hold trial proceedings in abeyance was an appealable order. And *Kashamu* did not deal with the fugitive disentitlement doctrine at all. It was an interlocutory appeal from a district court's denial of a motion to dismiss on speedy trial grounds *on the merits*.[4] To the extent the Seventh Circuit affirmed the defendant's "fugitive" status, it was because the defendant had been arrested in the United Kingdom, released after the British trial court denied extradition, and then immediately fled to Nigeria. Neither case, in other words, embraced *Osipov*'s boundless definition of "fugitive".

Here, there is no affirmative evidence that Ms. Simes is a fugitive of any kind. While the Indictment alleges conduct taking place within the United States, she did not abscond to avoid judicial process. She made no secret of her travel plans, traveled on her own passport repeatedly through U.S. ports of entry throughout the period covered in the Indictment, and now lives openly in Moscow with her husband, where she has exhibited her artwork throughout her career. This is not the behavior of someone seeking to "distance herself from the United States or frustrate arrest." *Bescond*, 24 F.4th at 771.

In short, Ms. Simes is not a "fugitive," traditional or constructive. Her presence abroad was not motivated by the charges against her. She has taken no steps to thwart extradition or evade process. She is "entitled to reside [in Moscow] and remain there." *United States v.*

---

[4] In a footnote, Magistrate Judge Faruqi acknowledged that *Kashamu* was not actually about the fugitive disentitlement doctrine, but instead on its "underlying analysis of who qualifies as a 'fugitive.'" *Osipov*, 2024 WL 4367523, at *2 n.3. But as the Seventh Circuit and the government have acknowledged elsewhere, "the term 'fugitive' may take on subtly different meanings as it is used in a variety of legal contexts. Reasonable minds can disagree, and have disagreed, about how the term applies in the case at hand. Instead of deciding that contested issue, we will … instead reach[] the merits." *United States v. Bokhari*, 757 F.3d 664, 672 (7th Cir. 2014).

*Cornelson*, 595 F. Supp. 3d 265, 271 (S.D.N.Y. 2022). And she "did not flee from the jurisdiction or from any restraints placed upon [her]." *Hijazi*, 589 F.3d at 412.

### B. Ms. Simes absence from the jurisdiction does not warrant the "severe sanction" of disentitlement.

Even if Ms. Simes was a "constructive fugitive" the important issues presented in her motion to dismiss warrant prompt resolution before presentment. As a "sanction," the fugitive disentitlement doctrine only closes the courthouse door where the individual's misconduct is worthy of sanction "to redress the indignity visited upon the District Court by [the defendant's] absence from the criminal proceeding, and the need to deter flight from criminal prosecution." *Degen*, 517 U.S. at 828. The D.C. Circuit has further emphasized that such a sanction is appropriate only where the defendants' absence from the jurisdiction "affects the court's ability to carry out its judicial business [or] prejudices the government as a litigant." *Daccarett-Ghia v. Commissioner*, 70 F.3d 621, 626 (D.C. Cir. 1995). Here, none of these considerations apply.

### 1) Special circumstances justify filing this motion prior to presentment.

Ms. Simes' "reasons for litigating from home are legitimate and fair." *Bescond*, 24 F.4th at 774. Resolving a motion to dismiss prior to presentment is appropriate where doing so will "prevent harassment or the use of other unconstitutional procedures against an accused." *Hughes*, 415 U.S. at 1302. In other words, where the prosecution itself violates the defendant's rights, and where the consequences of presentment and proceeding in the ordinary course will exacerbate those constitutional harms, this Court can and should act at the earliest opportunity.

Like Case No. 24-cr-404, this case is "fraught with political overtones." *United States v. Noriega*, 683 F. Supp. 1373, 1374-75 (S.D. Fla. 1988). The Indictment was brought simultaneously with the indictment against the Simes together. In fact, given the common

14

nucleus of facts respecting the money laundering allegations, it is not even clear why these charges against Ms. Simes were indicted separately. The case against Ms. Simes individually, therefore, carries all the same risks of being viewed as a "political proceeding." *Id*.

This case also presents important issues of "first impression." *Noriega*, 683 F. Supp. at 1374. The High-Value Artwork Guidance breaks sharply from OFAC's traditional approach to interpreting the Berman Amendments. Historically, OFAC sought to cabin the scope of the Berman Amendments based upon whether the information or informational materials were "fully created and in existence at the date of the transactions," not their commercial significance. 31 C.F.R. § 510.213(c)(2). "[T]he key distinction" OFAC has historically drawn in terms of what the Berman Amendments protect and what may be prohibited, has "rest[ed] between informational materials that are widely circulated in a standardized format and those that are bespoke." *Amirnazmi*, 645 F.3d at 587; *United States v. Griffith*, 515 F. Supp. 3d 106, 116 (S.D.N.Y. 2021). The High-Value Artwork Guidance, by contrast, applies near exclusively to existing works of art that have obtained sufficient market value to be considered "high-value" and therefore prohibitable.

No Court has yet construed this novel interpretation of the Berman Amendments. In fact, no Court has interpreted the Berman Amendments scope since the Supreme Court's decision in *Loper Bright*. Given the importance that Congress placed on the Berman Amendments and the First Amendment interests that they protect, this Court should waste no time in deciding the broadly significant issues of first impression presented here.

If the allegations against Ms. Simes were well-established criminal acts, and clearly within the scope of a criminal statute, this Court might be justified in concluding that the impairment of her fundamental constitutional right to travel and earn a living as an artist abroad

15

was consistent with due process and the First Amendment. *See Zemel v. Rusk*, 381 U.S. 1, 14 (1965); *Aptheker v. Secretary of State*, 378 U.S. 500, 517 (1964); *Kent v. Dulles*, 357 U.S. 116, 125-26 (1958). But here, where the plain language of the statute under which Ms. Simes has been charged so evidently casts the validity of the charges against her into doubt, there is no equitable justification for requiring her to return to the United States for "extended absence" that "could jeopardize her career." *Bescond*, 24 F.4th at 767. The interests of justice are best served by answering the threshold question of the Indictment's facial validity before presentment.

### 2)    Ms. Simes' physical presence is unnecessary to resolve this motion.

All Ms. Simes asserts is "the right of a foreign defendant who did not flee the United States to have a threshold question relating to [her] duty to appear at all resolved within a reasonable time." *Hijazi*, 589 F.3d at 409. The questions presented in this motion to dismiss are pure questions of law that can be decided on the face of the Indictment. Ms. Simes' "presence [is] in no way required" to resolve this motion. *Daccarett-Ghia*, 70 F.3d at 627; *see also Ajaka v. Gacki*, 557 F. Supp. 3d 45, 50 (D.D.C. 2021) ("The Court needs only to evaluate the administrative record to determine whether the government's designation was arbitrary and capricious. The Ajakas' fugitive status has little effect on the Court's 'own docket and its own proceedings'") (quoting *Daccarett-Ghia,* 70 F.3d at 626); *Lazaridis v. DOJ*, 713 F. Supp. 2d 64, 69 (D.D.C. 2010) (disentitlement is unwarranted where "physical presence … is unlikely to be required). There is no prospect, for example, of Ms. Simes refusing to "provide certain discovery material" or doing anything else that would constitute a "significant interference with its proceedings." *Daccarett-Ghia*, 70 F.3d at 628.

16

**3)** **Deciding this motion before presentment protects the dignity of this Court and the government's legitimate prosecutorial interests.**

Ms. Simes has done nothing to affront the dignity of this Court. As noted above, she did not flee. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993). She has not evaded arrest. "[T]here is no basis for a finding that [Ms. Simes] is exhibiting disrespect for U.S. law. … All [she has] done is stay home." *Bescond*, 24 F.4th at 774.

Likewise, if the government prevails, it will have the benefit of a "federal court decision upholding the indictment … mak[ing] [foreign] governments more likely to exercise [their] discretion [to extradite Ms. Simes] and less confident in resisting diplomatic pressure from the United States if they are no longer able to protest that the indictment is legally flawed as a matter of U.S. law." *Hijazi*, 589 F.3d at 413; *accord Cornelson*, 595 F. Supp. 3d at 272.   The government has no legitimate interest in coercing a defendant's "presence in court by imposing financial, reputational, and family hardship regardless of her guilt or innocence, and regardless of whether the indictment charges violations of" federal law. *Bescond*, 24 F.4th at 775; *see also Hijazi*, 589 F.3d at 407. Resolving this motion pre-presentment is therefore warranted because the clarity of the statutory text leaves one to only guess why the government believes the "allegations are legally sufficient."

## CONCLUSION

For the foregoing reasons, the Indictment should be dismissed without further delay.

17

Dated: May 4, 2026

Respectfully Submitted,

STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: +1 212-506-3900

/s/  *Jason D. Wright*_____

Jason D. Wright (DC Bar #1029983)
E-mail: jwright@steptoe.com

Michel Paradis (DC Bar #499690)
E-mail: mparadis@steptoe.com

Julia Gatto (pro hac vice to be submitted)
E-mail: jgatto@steptoe.com

Andrew Adams (pro hac vice to be submitted)
E-mail: acadams@steptoe.com


*Counsel for Defendant Anastasia Simes*